**Ray Kennedy GRIFFIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 245–90.

Court of Criminal Appeals of Texas, En Banc.

June 5, 1991.

Rehearing Denied Sept. 18, 1991.

Mike McCollum, Dallas, J. Thomas Sullivan, Little Rock, Ark., for appellant.

John Vance, Dist. Atty., and Carolyn Fitzgerald Levin, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

**OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

PER CURIAM.

A jury convicted appellant of burglary of a motor vehicle, and the trial court assessed punishment at confinement for six years. On appeal appellant complained that he had argued that removal of a tire and hubcap was not burglary, the State objected that such was a mistatement of the law, and the trial court sustained that objection. The court of appeals assumed, *without deciding*, that the objection was improperly sustained, thus constituting error, but held it was not reversible and affirmed the judgment. *Griffin v. State*, 725 S.W.2d 773 (Tex.App.—Dallas 1987). On review we decided the court of appeals used the wrong test and remanded the cause for that court to determine *"whether the trial court erred* in sustaining the State's objection" and, *"if so,* whether such error was harmless under Tex.R.App.Pro. 81(b)(2). *Griffin v. State*, 779 S.W.2d 431 (Tex.Cr.App.1989)." The court of appeals then held that removal of hubcaps and tires from a vehicle by use of a tire tool constituted burglary of a vehicle under V.T.C.A. Penal Code, § 30.04, so the trial court did *not* err in sustaining the objection. The court nevertheless found "any error ... is harmless beyond a reasonable doubt." *Griffin v. State*, 785 S.W.2d 179 (Tex. App.—Dallas 1990). We granted review to address both issues.

During early morning hours in January 1986 two police officers observed appellant crouched by a car parked near a closed gas station. Appellant had a tire jack in his hand and walked over to a pickup truck which was parked very close to the car; the hood of the pickup was raised. Appellant slid the jack under the pickup. The

officers noticed that a wheel had been removed from the car, as well as a hubcap and lug nuts from another wheel. Appellant indicated he was having trouble with the battery in his pickup and did not know who owned the car. The officers found a battery and a wheel in the pickup bed, both fitting the car; fresh pry marks on the battery matched fresh pry marks on battery cables in the car. Moisture and rust marks on the battery bracket in the car corresponded to similar marks on the battery. The battery from the pickup did not fit inside the bracket in the car.

Appellant does not dispute that removal of the battery is an "entry" for purposes of burglary of a vehicle. The issue is whether removal of tires and hubcaps is also an "entry." A review of the evolution of the burglary statutes is helpful to understanding "entry" in this context. Under pre-1973 statutes burglary could be committed in several ways. A "breaking" or "actual force" was necessary for a daytime entry to constitute burglary. V.T.C.A. Penal Code, Art. 1390 and Art. 1394 (1925). "Breaking" was defined in Art. 1394:

> By "breaking," as used in this chapter, is meant that the entry must be made with actual force. The slightest force, however, is sufficient to constitute breaking; it may be by lifting the latch of a door that is shut, or by raising a window, the entry at a chimney, or other unusual place, the introduction of the hand or any instrument to draw out the property through an aperture made by the offender for that purpose.

Nighttime burglary could be accomplished through entry at night by force, threats, or fraud, or by entry at any time and remaining concealed. V.T.C.A. Penal Code, Art. 1389 (1925). Burglary of a private residence at night was accomplished by entry at night by force, threats or fraud, or by entering in any manner at any time, and remaining concealed until night. V.T.C.A. Penal Code, Art. 1391 (1925). "Entry" was defined in two provisions: V.T.C.A. Penal Code, Art. 1392 (1925) stated,

> The "entry" into a house includes every kind of entry but one made by the free consent of the occupant, or of one autho-

rized to give such consent; it is not necessary that there should be any actual breaking to constitute burglary, except when the entry is made in the daytime.

V.T.C.A. Penal Code, Art. 1393 (1925) further defined entry:

> The entry is not confined to the entrance of the whole body; it may consist of the entry of any part for the purpose of committing a felony or theft, or it may be constituted by the discharge of firearms or other deadly missile into the house, with intent to injure any person therein, or by the introduction of any instrument for the purpose of taking from the house any personal property, although no part of the body of the offender should be introduced.

In 1951 the 52nd Legislature added Art. 1404b, to Chapter 6 of the Penal Code, making burglary of a vehicle an offense for the first time. The statute stated:

> Section 1. Any person who shall, by breaking, enter a vehicle for the purpose of committing a felony or misdemeanor shall be confined in the State penitentiary for not more than three (3) years.
>
>     *     *     *     *     *     *
>
> Section 3. The breaking of any of the glass vents, glass windows or windshield or locking devices of a vehicle or the insertion of hands or any foreign object through vent wings and opening a locking device shall constitute "breaking and entering."

The definitions, rules and explanations of terms in Chapter 5, dealing with burglary, were specifically made applicable to "such terms" when used in Chapter 6. V.T.C.A. Penal Code, Art. 1406 (1925).

In 1955 the Legislature amended Art. 1404b as follows:

> Section 1. Any person who breaks into or enters a vehicle with the intent of committing a felony or the crime of theft shall be guilty of a felony and upon conviction thereof shall be confined in the State penitentiary for a term of not more than three (3) years.
>
>     *     *     *     *     *     *

Section 3. The breaking of any glass vent, glass window or windshield, or any other part of a vehicle, or the breaking or opening of any latch or locking device of a vehicle shall constitute "breaking into a vehicle"; and the insertion of hand or any part of the body or any foreign object through a vent wing, door, or other opening of a vehicle shall constitute "entering a vehicle."

In 1973 these provisions were repealed and replaced with the current statutes, § 30.02, pertaining to burglary of a habitation or a building, and § 30.04, pertaining to burglary of vehicles. Section 30.02 abolished the distinction between daytime and nighttime burglary and abolished any requirement for a "breaking," requiring only an entry with the requisite intent. Section 30.04 retained the requirement for a "breaking" by requiring a "breaking into" the vehicle, but omitted any definition of "breaking into" as had been included in Art. 1404b. Section 30.04 states:

- (a) A person commits an offense if, without the effective consent of the owner, he breaks into or enters a vehicle or any part of a vehicle with intent to commit any felony or theft.
- (b) For purposes of this section, "enter" means to intrude:
- (1) any part of the body; or
- (2) any physical object connected with the body.

The elements of burglary of a vehicle in Art. 1404b, § 1, are very similar to those in § 30.04(a), in particular the requirement of "break into or enter." Article 1404b, § 3 as amended in 1955 modified the previous law by adding "any part of a vehicle" to the list of parts that one could "break" and be guilty of burglary of a vehicle. The specific parts listed, "any glass vent, glass window or windshield," were obviously parts of a vehicle through which entry into the inside of a vehicle could be obtained. The 1955 amendment broadened "breaking" by not limiting it to any particular

named part. This section still required reference to the definition of "breaking" in Art. 1394, which defined breaking as use of force to accomplish an entry. See Art. 1406. Force, in and of itself, was not a "breaking." "Breaking" in the context of burglary has traditionally meant force used to *enter* a place.[1] Since there is no definition of "breaking into" in § 30.04, it should be given its plain meaning unless the act clearly shows that it is used in some other sense. See *Nevarez v. State,* 767 S.W.2d 766 (Tex.Cr.App.1989). Whether we assume that in the context of burglary offenses "breaking into" has acquired a special meaning over the years, meaning force used to enter something, or we apply the plain meaning of "into" with breaking, (see *Landry v. State,* 653 S.W.2d 28 (Tex.Cr.App.1983)), as use of some force to get to the inside of, or within, or entry, the meanings are essentially the same.

In *Landry,* a burglary of a vehicle case, this Court stated that the term "break into" is included within "entry" as that term is defined in § 30.04. The two terms are not separate means of committing burglary, and when an "entry" is alleged, it necessarily includes a "breaking into." Section 30.04 defines "enter" as meaning "to intrude any part of the body; or any physical object connected with the body." In *Landry* we set out a definition of "intrude" from Webster's New International Dictionary, 2d ed., unabridged, as "To thrust or force (something) in or upon. . . . To enter by force; to invade." Other dictionaries are similar: "to come or join in without being invited or wanted," Oxford American Dictionary (1980); "[Intransitive verb] 1: to thrust oneself in without invitation, permission, or welcome 2: to enter as a geological intrusion [Transitive verb] 1: to thrust or force in or upon esp. without permission, welcome, or fitness 2: to cause to enter as if by force," Webster's Ninth New Collegiate Dictionary; "1. To inter-

---

**1.** The trial court in the instant case recognized this particular use of "breaking" when he defined "break" in the charge to the jury to mean "the application of actual force to some part of a vehicle, such as the breaking of any glass vent, glass window, or windshield, or any other part of a vehicle, or the breaking or opening of any latch or locking device of a vehicle *for the purpose of making entry into a vehicle."* (Emphasis added).

pose (oneself or something) without invitation, fitness, or leave. 2. Geology. To thrust (molten rock) into a stratum. To come in rudely or inappropriately; enter as an improper or unwanted element ... to thrust in," The American Heritage Dictionary of the English Language. An entry into something is the essence of an intrusion.

The definition of "entry" is identical in §§ 30.02 and 30.04. The gist of burglary is the entry with the requisite intent. Case law and the definitions of entry show that entry has long meant an intrusion *into* the house or building. See Art. 1392, Art. 1393, and Art. 1394; and cf. *Galemore v. State,* 124 Tex.Cr.R. 77, 61 S.W.2d 519 (1933) (opening a door and looking inside is not burglary). However, see *Bass v. State,* 126 Tex.Cr.R. 170, 70 S.W.2d 730 (1934) (boring a hole in floor of boxcar to get grain out is burglary); *Mobley v. State,* 130 Tex.Cr.R. 159, 92 S.W.2d 1038 (1936) (cutting a hole in the roof of a building and entering attic is burglary); *Turner v. State,* 165 Tex.Cr.R. 106, 303 S.W.2d 386 (1957) (hole in roof and entry into area above ceiling is burglary); *Hutchinson v. State,* 481 S.W.2d 881 (Tex.Cr.App.1972) (kicking in a window and reaching inside is burglary); *Martinez v. State,* 469 S.W.2d 185 (Tex.Cr.App.1971) (hole in the building and entering through it is burglary).

■ Because "enter" is defined exactly the same for burglary of a building or habitation as it is for burglary of a vehicle, the element of intrusion into a building or habitation under § 30.02 should be of the same nature as intrusion into a vehicle under § 30.04. Stealing a mailbox or a window shutter attached to the side of a house would not be entry so as to constitute burglary. Similarly, stealing a hood ornament or antenna attached to the outside of a vehicle would not be entry so as to constitute burglary of a vehicle. Tires and hubcaps are analogous to these examples, because no entry of any part of the vehicle is effected.

Contrast the taking of something from inside the trunk, inside the hood, or from the interior of the vehicle. There must be a "breaking of the close" to have entry in the sense long established for burglary. The protection is to the interior or enclosed part of the described object, be it a house, a building or a vehicle. Cf. *Galemore,* supra, where opening a door and looking in is not burglary because there is no entry. Taking items attached to the outside of the vehicle, house, or building that does not reflect an entry *into* an interior or enclosed part of the described object in order to steal does not constitute the offense of burglary. Since the burglary of a vehicle statute evolved from the "regular" burglary statutes, the interpretation of entry should be consistent. Therefore, we hold that taking the hubcaps or tires that are attached to the outside of the car, when no entry into any enclosed portion of the car is made to effectuate that taking, is not burglary of a vehicle.

■ In the instant case defense counsel argued to the jury that "taking the tire off the vehicle does not break into or enter the vehicle." The trial court erred in sustaining the State's objection to this argument.

We turn now to the question of harm, gratuitously decided below. See *ante,* at 576.

The State sought to show that appellant burglarized the car by removing both the battery and tires; as the court of appeals recognized, the defense attempted to persuade the jury that evidence was insufficient to prove he took the battery, and that removal of wheels does not constitute burglary of vehicle. Undertaking to calculate the probable impact of the error in light of all other evidence admitted at trial, citing *Belyeu v. State,* 791 S.W.2d 66 (Tex.Cr. App.1989) and *Harris v. State,* 790 S.W.2d 568 (Tex.Cr.App.1989), the court of appeals noted that in his first petition for discretionary review appellant did not challenge its original finding that the evidence was sufficient with respect to the battery, and did not dispute that raising the hood to take it amounts to burglary of a motor vehicle.[2] From those premises the court

2. We attach no significance to his decision not    to raise sufficiency of evidence regarding the

believed the error harmless for one reason, *viz:*

> "The jury had sufficient evidence before it to convict appellant of burglary of a vehicle for entering the car to remove the battery, without considering appellant's entry to remove the tires."

*Griffin,* 785 S.W.2d, at 181.

We are satisfied that Rule 81(b)(2) contemplates a more searching analysis than finding "sufficient evidence to convict." *Satterwhite v. Texas,* 486 U.S. 249, at 258–259, 108 S.Ct. 1792, at 1798, 100 L.Ed.2d 284, at 295 (1988) (question not whether legally admitted evidence sufficient to support guilty verdict but whether State proved beyond a reasonable doubt the error did not contribute to the verdict); *Chapman v. California,* 386 U.S 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harris v. State,* supra, at 586, 587–588 (appellate court obligated to examine record in "neutral, impartial and even-handed manner, not in light most favorable to verdict because, for example, error can be harmful which disparages a defense; court should not focus on propriety of outcome of trial, nor on weight of other evidence, but whether error at issue might possibly have prejudiced jurors' decision making; effect of error, not other evidence, dictates court's judgment); *Belyeu v. State,* supra, at 74–75." We will examine the record in those lights.

The indictment alleged in pertinent part that appellant did "knowingly and intentionally break and enter a vehicle without the effective consent of James Taylor, the owner thereof … with the intent to commit theft[.]" The charge tracked those allegations in authorizing the jury to convict; it did not submit to the jury as specific issues whether appellant broke and entered by raising the hood of the car to take the battery or by removing hubcaps and lugs to take wheels. But as the evidence developed during trial, the State claimed both manner and means, whereas the defense contended evidence was insufficient to show a taking of the battery by appellant, and that as a matter of law removing the wheels did not constitute breaking and entering the car.[3]

The trial court deprived appellant of his latter defense by sustaining the State's objection which, as this Court previously discerned, "put [its] imprimatur of authority behind the prosecutor's incorrect statement of the law … and, in effect, gave an incorrect statement of the law to the jury," *Griffin,* at 434, and "in effect, told the jury that removal of tires from a vehicle does indeed constitute breaking and entering a vehicle," *ibid.*

On the other hand, appellant argued from the definition of "breaking" in the charge, see n. 1, *ante,* that because there was no evidence the hood of the car was latched, he did not "see any way you can undo a locking device or a latch if you don't know that it was latched." The prosecutor objected "as mistatement of the law … [y]ou don't have to have the latch locked for there to be a break and intrusion." The trial court overruled that objection, lending credence to the notion advanced by appellant with respect to taking the battery. So, he continued, if there is no such evidence, "then how are you [jurors] going to decide that somebody entered or broke into that latch?" Appellant further argued then, as he does now, that evidence of removing the battery might show an unlawful entry but is not enough to sustain the requisite burden of proof in that complainant could not say that the battery in the pickup had been in his car, and circum-

---

battery on PDR in our Cause No. 241–87. First, this Court has demonstrated its deference to a determination on direct appeal that evidence is sufficient. Second, with an appellate opinion assuming trial error on a point of law essential to his defense and a dissenting opinion that would reverse and remand for new trial, appellant prayed that this Court summarily reverse the judgment on the strength of the dissenting opinion or, alternatively, reverse and remand

for further proceedings. He achieved the latter. *Griffin,* 779 S.W.2d 431, at 434.

3. Mr. Taylor testified that on the evening before while his wife was driving the automobile, it malfunctioned; she got it onto the service station parking lot and left it there, getting a ride home. He did not know what kind of battery it was, nor could he describe it. One of the officers said the car was "real dirty, full of garbage and things," and its hood was not raised.

stantial evidence that appellant took it was weak.

The prosecutor urged jurors "to use your common sense" in deducing from the evidence he detailed just where the battery found in the bed of the pickup came from. He argued from the definition of "break," *ante*, at n. 1, that "application of actual force" meant "all you got to do is break that force field [around the vehicle];" there was plenty evidence that appellant did that by prying out the battery, picking it up and walking away with it, and by taking off hubcaps and lug nuts and removing the wheel.[4]

Thus to find appellant guilty, the jury had essentially two options: appellant broke and entered by raising the hood to take the battery, or he broke and entered by removing hubcaps and lug nuts to take one wheel and attempting to take another. Strength of the first was weakened by the trial court effectively approving the point made by appellant about the condition of the locking device or latch on the hood. The second was strengthened by the erroneous ruling by the trial court that to take a tire off a car is to break and enter, and thus a person commits burglary of a motor vehicle.

The ruling was in practical effect a directed verdict of guilt. A rational jury given to understand that removing hubcap and lug nuts to take a wheel would be breaking and entering a motor vehicle could quickly find that a person seen crouched by the right front wheel of a car from which hubcap and lug nuts had been removed, and who had apparently already removed hubcap and lug nuts and taken the left front wheel was guilty of burglary of an automobile. Under the court's charge, that finding alone was sufficient to return a verdict of guilt.

Contrastively, perceiving difficulty in resolving the questions of preexisting status of the locking device or latch on the hood, or inability of owner to identify the battery and of other circumstantial evidence relative to pry marks, rust and the like, and realizing it was not required to resolve those questions in order to find guilt, such a jury could easily decide to sign off on a guilty verdict without ever determining those issues.

Accordingly, there is a reasonable possibility that the error complained of might have contributed to conviction, and under Rule 81(b)(2) we are unable to declare beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18 at 24–26, 87 S.Ct. 824, at 828–829, 17 L.Ed.2d 705, at 710–711 (1967); *Harris v. State*, supra, at 584–585.

Therefore, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court.

McCORMICK, P.J., and WHITE, J., dissent.

---

4. A jack and tire tool were in evidence as State's Exhibit 2. In the course of his argument about "breaking the force field," the prosecutor illustrated his point, *viz:*

"The force used here was the force on the lug nuts that you saw were loosened up when the police officers arrived, and you saw the lugs nuts and the hubcap on the ground already. How do you think he got them off, magic? No, he had to use force. That's what this is, He used things, right here. These are the tools of his crime, to take off those lug nuts, to take off the tires, to steal them, to break into that vehicle."

In response to appellant's complaint that fingerprint evidence was lacking, the prosecutor argued there was no need, *viz:*

"Now, ... you want the DPD to come down here and take fingerprints on a case like this? Don't you think that seems like a waste of time when you caught the man sitting right there, taking off the other tire? ... There's no need to. When you catch a man sitting next to a car that he's breaking into, what kind of evidence do you want? Use your common sense...."