**Ricky Dale FORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–92–232 CR.**

Court of Appeals of Texas,
Beaumont.

Aug. 25, 1993.

---

John D. Reeves, Lufkin, for appellant.

Clyde M. Herrington, Dist. Atty., Art Bauereiss, Asst. Dist. Atty., Lufkin, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction of the felony offense of Burglary of a Vehicle. Appellant's indictment included two separate enhancement allegations which raised appellant's punishment status to that of an habitual offender. Following a guilty verdict, the jury assessed punishment of ninety-nine (99) years in the Institutional Division of the Texas Department of Criminal Justice. The jury also fined appellant $10,000. Appellant presents two points of error on appeal, viz:

Point of Error I: The prosecutor's jury argument was manifestly improper, harmful and prejudicial as a comment on the failure of the accused to testify.

Point of Error II: The evidence was insufficient to prove that the appellant committed the offense of Burglary of a Vehicle.

Under the first point of error, appellant complains of the following argument made by the State's attorney during his opening statement to the jury during the guilt/innocence phase of trial:

... I think one of the things you will come to a conclusion was that the defendant was acting wrongfully, that he was out there committing a burglary. And here's why. First of all, look at the time of the day. Defendant was out at 5:00 in the morning. That in itself, by itself, folks, I don't think establishes too much. After all, Mr. Maranda was out a [sic] five in the morning. But what was his purpose? Mr. Maranda was out delivering newspapers, going about his business. What about the defendant? Was he going about business? Arguably not because he was at an establishment that was closed up at that hour. There is no testimony that refutes that.... What else about it? Well, take a look at the way he was acting. Both Jim Maranda and Officer Phil Davis testified the defendant was acting suspiciously, so you have two things. You have the defendant in a closed establishment during early morning hours, and the way he's acting. Defendant, there is no testimony that he was an employee, that he was a customer, or had any other legitimate business purpose there. Another thing that is real important in this case, real critical in this case, I feel, is what is the defendant's action when he is confronted by the police? That's always very important. How does he act when the police come up and check him out. Does he continue to act suspiciously? Or does he have some reasonable explanation for his actions?

The record reflects that appellant made no objection to any part of this argument, therefore, appellant failed to properly preserve the complaint for appellate review. TEX.R.APP.P. 52(a). In his brief, appellant candidly acknowledges his procedural error at trial but requests this Court treat the State's comments as fundamental error because of their egregious nature. Although decided prior to the Rules of Appellate Procedure, *Johnson v. State*, 629 S.W.2d 953 (Tex.Crim.App.1982) provides:

In his petition for discretionary review, appellant contends that the prosecutor committed fundamental error in his argu-

ment to the jury when he directly alluded to the appellant's failure to testify. The Court of Appeals concluded that the complained of argument did not constitute a comment on appellant's failure to testify. A concurring opinion, filed by Associate Justice John Vance, concluded that the complained of argument was necessarily a reference to appellant's failure to testify. However, the concurring Justice noted that the appellant did not specifically object to the prosecutor's comment. Therefore, nothing was presented for review.

We have examined the record on appeal *and agree with the concurring opinion.* (emphasis added)

*Johnson,* 629 S.W.2d at 954. *See also, Espinoza v. State,* 843 S.W.2d 729, 730–731 (Tex. App.—Austin 1992, pet. ref'd).

There are certain meritorious complaints of error which will present an appellate court with nothing to review if a proper objection and adverse ruling is not first obtained at the trial court level. In the instant case, appellant's first point of error falls within this rule. We hold that the State's argument was not fundamentally harmful to the extent that proper objection was unnecessary. Appellant has failed to properly preserve this point for appellate review. Point of error one is overruled.

Appellant's second point of error complains of the sufficiency of the evidence. A review of the facts in the light most favorable to the verdict is in order. Factually, on January 29, 1992, at approximately 5:00 a.m., Jimmy Maranda was delivering newspapers to the Texaco station on the corner of Denman and Timberland Streets in Lufkin. When Mr. Maranda pulled up to the store he observed an individual crouched down behind a pick-up truck parked at a business, Wheat's Alternator and Starter Service, adjacent to the Texaco station. The individual, later identified by Mr. Maranda as appellant, was crouched down on the driver's side of the truck. Mr. Maranda stated that appellant was acting "highly suspicious" as appellant continued to crouch and peek around the truck in an attempt to hide from Maranda. Maranda stated that the lighting was very good and that he (Maranda) was only about forty feet

away from the truck. Maranda further testified that he drove to the police station and reported the suspicious events to the police.

The State next called Officer Phil Davis of the Lufkin Police Department. Officer Davis testified that he was on patrol on the morning of January 29, 1992, when he was dispatched to Wheat's regarding a suspicious person. When Officer Davis pulled his marked patrol unit up to the closed business, Davis observed a white male, later identified as appellant, standing on the driver's side of the truck, standing "toward a box on the truck ... kinda crouched over it and when he seen (sic) me, he turned to his right and seen (sic) me, he immediately kinda ducked and walked in front of the truck." Officer Davis exited the patrol unit and walked up to the front of the truck via the passenger side and appellant walked away towards an open field and was approximately ten to fifteen yards away when the officer reached the front of the truck.

At this point, Officer Davis identified himself and called for appellant to stop. Appellant did not stop but took several more steps. Officer Davis, unable to see appellant's hands, drew his weapon and requested that appellant stop immediately. Appellant stopped at that point. Officer Davis then saw and heard appellant drop several "shining" objects to the ground. The objects made a clanking sound upon striking the ground. A search of appellant turned up no weapons or property. Appellant initially identified himself as Terry Fielder, but he had no corroborating identification. Appellant further stated that he was staying at Petty's Motel and gave Davis a particular room number. The motel clerk revealed no Terry Fielder registered at Petty's Motel. Appellant also told Officer Davis that he (appellant) was employed by the owner of the truck as his driver and that he (appellant) was taking an air compressor off the truck for the owner. Davis noticed that appellant was wearing gloves and that appellant acted "real nervous." After a backup unit arrived, appellant was detained at the scene as Officer Davis attempted to verify appellant's statement.

At the spot where appellant had been standing when Officer Davis observed him drop the items, Davis retrieved a screwdriver, a crescent wrench, a pair of scissors, and a bolt. Davis also observed footprints around the truck leading to the side of the truck where the tool box was located in the bed of the truck. Davis compared the pattern of the footprints with the design on the bottom of appellant's shoes and noted that the size and pattern matched.

Officer Davis contacted the owner of Wheat's who informed Davis that no one in his employ was working at that time of the morning and that no one had begun work on the truck in question. Officer Davis also summoned the owner of the truck, Raul Rodrigues, to the scene.

Raul Rodrigues was the State's next witness. Mr. Rodrigues stated that the truck belonged to him and that the truck had two tool boxes bolted and welded to the bed of the truck. Rodrigues testified that he brought his truck to Wheat's the afternoon of January 28, 1992, to have the alternator repaired. He stated that on the morning of the 29th, Lufkin Police called him to come down to Wheat's. Rodrigues stated that the police showed him a screwdriver, a crescent wrench, and some other tools. Rodrigues recognized the screwdriver and crescent wrench as his property that was in the unlocked tool box on the driver's side of his truck. Mr. Rodrigues was asked by the State if he could identify the appellant or if appellant had ever worked for him. Rodrigues answered in the negative to both questions. Rodrigues further testified that it was his custom to keep the screwdriver and other certain tools in the tool box because they were used in his line of work, i.e., setting up mobile homes. Rodrigues unequivocally stated that he (Rodrigues) knew that he left the screwdriver inside the tool box, and no other place. Rodrigues also mentioned that his examination of the tool box at the scene of the burglary indicated that a portable warning light inside the tool box had been turned upside-down by someone other than himself because Rodrigues stated that he never placed the light in the tool box in that position.

Finally, the State recalled Officer Davis to testify. Officer Davis identified the scissors and the bolt as the other two items recovered with the screwdriver and crescent wrench at the spot appellant was standing when Davis heard and observed appellant drop something. Davis confirmed that in his experience as a police officer, items such as the bolt and the scissors could be used to assist in a burglary or a theft.

TEX.PENAL CODE ANN. sec. 30.04 (Vernon 1989) sets out the statutory language regarding the offense of Burglary of a Vehicle. Section 30.04 provides:

(a) A person commits an offense if, without the effective consent of the owner, he breaks into or enters a vehicle or any part of a vehicle with intent to commit any felony or theft.

(b) For purposes of this section, "enter" means to intrude:

(1) any part of the body; or

(2) any physical object connected with the body.

Appellant argues that the proof in the instant case is insufficient because the State's evidence did not show that appellant entered into the "interior or enclosed portion of the vehicle. It is appellant's contention that the interior of the vehicle in the instant case is the cab and not a tool box located in the bed of the truck." Appellant's Brief at 14. Appellant relies on *Griffin v. State*, 815 S.W.2d 576 (Tex.Crim.App.1991) as authority to support his position. In *Griffin*, the accused used a tire tool to remove hubcaps and tires from a vehicle. He was subsequently charged with, and convicted of Burglary of a Vehicle. The Court of Criminal Appeals framed the issue as "whether removal of tires and hubcaps is also an 'entry'." *Id.* at 577. Following a rather extensive review of the evolution of the burglary statutes to better understand the concept of "entry," the Court concluded:

Because "enter" is defined exactly the same for burglary of a building or habitation as it is for burglary of a vehicle, the element of intrusion into a building or habitation under § 30.02 should be of the same nature as intrusion into a vehicle

under § 30.04. Stealing a mailbox or a window shutter attached to the side of a house would not be entry so as to constitute burglary. Similarly, stealing a hood ornament or antenna attached to the outside of a vehicle would not be entry so as to constitute burglary of a vehicle. Tires and hubcaps are analogous to these examples because no entry of any part of the vehicle is effected.

Contrast the taking of something from inside the trunk, inside the hood, or from the interior of the vehicle. There must be a "breaking of the close" to have entry in the sense long established for burglary. The protection is to the interior or enclosed part of the described object, be it a house, a building or a vehicle.... Therefore, we hold that taking the hubcaps or tires that are attached to the outside of the car, when no entry into any enclosed portion of the car is made to effectuate that taking, is not burglary of a vehicle.

*Id.* at 579.

Appellant contends that the tool box in question is analogous to hubcaps or tires in the *Griffin* case because it is an item which is attached to the outside of a vehicle. Since it is described as being on the outside of a vehicle, the offense alleged cannot be Burglary of a Vehicle.

■ To clarify the term "entry" as used in *Griffin,* a distinction is made between items *attached to* a habitation, building, or vehicle, and items *located within "the interior or enclosed part" of* a habitation, building, or vehicle. Clearly, the removal of an item that is somehow attached to the *exterior* of a habitation, building, or vehicle is not "entry," according to *Griffin,* and cannot therefore be considered a burglary. On the other hand, removal of an item that is located *within the interior or enclosed part of* a habitation, building, or vehicle which removal requires the introduction of some physical object (hand, stick, iron claw, etc.), however slight, into the enclosure to gain control of the item, satisfies the required elements of burglary under the *Griffin* rationale.

■ In the instant case, the evidence indicated, albeit circumstantial, that the screw-

driver and crescent wrench belonging to Mr. Rodrigues were *inside* the tool box which was bolted and welded to his truck. The tool box with its lid closed was, for all intents and purposes, an enclosed part of the truck, analogous to the enclosed area beneath the hood or trunk lid of a vehicle. After reviewing the record in the instant case, we find sufficient evidence for any rational trier of fact to have found each element of the offense proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). Point of error two is overruled and the judgment and sentence of the trial court are affirmed.

AFFIRMED.