O’CONNOR, Justice (Ret.),
dissenting:
I agree with the majority’s conclusion that the damage at issue is not covered “vandalism” under the policy. See ante, Part 11(A)(2). I reach a different conclusion as to the construction of the building damage exception to the theft exclusion, what the majority terms “the most narrow and complex question” before the court. Id. at 579. For this reason, I would affirm the judgment of the District Court.
As the majority recognizes, when a court interprets an insurance policy under Texas law, “[ajmbiguity is ‘liberally’ construed in favor of the insured.” Id. at 577 (quoting Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex.1987)); see also Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.1984) (“It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage.”). Thus, we adopt the construction that favors the insured “as long as [it] ‘is not itself unreasonable.’ ” Ante at 577 (quoting U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353, 355 (Tex.1971)). Notably, we do so “[e]ven when the insurer’s interpretation appears to be the more likely reflection of the parties’ intent.” Id.; see also Ramsay v. Maryland Am. Gen. Ins. Co., 533 S.W.2d 344, 349 (Tex.1976) *584 (“When the language of a policy is susceptible of more than one reasonable construction, the courts will apply the construction which favors the insured and permits recovery.”).
Adhering to these interpretive mandates, I reach two conclusions as to the proper construction of the ambiguous provision before the court: First, the air conditioners must be understood to be part of the building. Second, the damage at issue is properly characterized as damage caused when burglars broke into those units. This understanding of the policy is reasonable and “avoid[s] exclusion of coverage.”
Under the terms of the policy, the air conditioning units are part of the “building.” The policies “Building and Personal Property Coverage Form” defines the term “building” to “includ[e] ... [fixtures, including outdoor fixtures.” Ante at 580, n. 17. Construed in the insured’s favor, this definition no doubt extends to the roof-mounted air conditioning units. Even if the coverage form could not reasonably be construed to extend to all of the policy’s provisions, we would be obliged to adopt a definition of the term “building” that included fixtures, as this would be a reasonable definition that favored the insured. There is nothing in the policy to prevent construing “building” to include fixtures. Understanding a building to comprise in part its fixtures is perfectly reasonable. Indeed, it is the most natural understanding of the term. Specifically, “[i]t is common knowledge that a furna[c]e, or air conditioner, or light ‘fixture’ ... is generally regarded by us all as part of the building to which the item is attached.” Alphonse M. Squillante, The Law of Fixtures: Common Law and the UCC, 89 Com. L.J. 501, 501 (1984) (emphasis added). We are thus obliged to consider the-air conditioning units to be part of the building. Parkans Int’l v. Zurich Ins. Co., 299 F.3d 514, 520 (2002) (“When interpreting an insurance contract, Texas courts will read its terms in their plain, ordinary, and popular sense unless the policy defines a term in some other way.”).
In terms of ordinary usage, it is natural to describe the damage at issue as the result of “breaking in ... of burglars.” Cf, e.g., Allstate Ins. Co. v. Smith, 450 S.W.2d 957, 959 (Tex.Civ.App.1970) (“breaking into the floor”). The majority itself writes that the criminals “broke into the [air conditioning] units themselves to steal their copper condenser coils.” Ante at 575 (emphasis added); see also id. at 583 (“The thief who breaks into the casing is breaking into the air conditioner itself[J” (emphasis added)). They “caused the damage in the course of gaining access to the object of their theft.” Id. at 579 (emphasis added). The damage underlying the claim was “solely in furtherance of stealing the copper.” Id. (emphasis added); see also id. (“[T]he actual cooling mechanisms inside the paneling were damaged by the thieves for the sole purpose of gaining access to the copper.”). In every sense, penetrating a structure in order to steal something inside is aptly described as “breaking in.”
Contrary to the majority, I conclude that Texas’ burglary statute further supports this construction of the policy. The majority recognizes that the Texas law definition of “burglar” includes a criminal who “‘enters a habitation, or a building (or any portion of a building) ... with intent to commit a ... theft.’ ” Ante at 581 (quoting Tex. Penal Code Ann. § 30.02 (Vernon 2008)) (emphasis added). The statute also “defines ‘enter’ as ‘to intrude ... any part of the body; or ... any physical object connected with the body.’ ” Id. (quoting Tex. Penal Code Ann. § 30.02 (Vernon 2008)). There can be no question that the thieves who destroyed the air *585 conditioning units intruded parts of their bodies and/or objects connected with their bodies—their hands, arms, and/or tools— into the air conditioning units. It would have otherwise been physically impossible for the thieves to gain access to the copper parts that they intended to and did steal. In sum, far from counseling against the insured’s construction of the policy, Texas law strongly supports that construction.
At its core, the court’s opinion reflects the majority’s conclusory assertion that the thieves “never became ‘burglars’ vis a vis the building qua building.” Id. In turn, this assertion rests on the majority’s insistence that “ ‘breaking in’ to a building unambiguously contemplates nothing more expansive than an attempt to enter bodily into the interior space of the building as bounded by the walls, floors and ceilings.” Id. at 580. But nothing in the policy demands such a cramped understanding of intrusion to apply only to a building’s “interior space.” That should be the end of the matter, because the majority’s narrowing construction works to exclude coverage. Nevertheless, Texas law offers additional support. It endorses a substantially more expansive view of entry. Texas cases involving the burglary of vehicles aptly illustrate the point. And it is wise to look to these eases “because ‘enter’ is defined exactly the same for burglary of a building or habitation as it is for burglary of a vehicle!;] the element of intrusion into a building or habitation under § 30.02 should be of the same nature as intrusion into a vehicle under § 30.04.” Griffin v. Texas, 815 S.W.2d 576, 579 (Tex.Crim.App.1991). For example, in Hopkins v. Texas, 864 S.W.2d 119, 120 (Tex.App.1993, pet refd), the court concluded that the defendant committed burglary when he stole a ladder off of “a ladder rack ... attached to the back of [a] truck.” The court explained that the defendant “could not have loosened the bungee cords [that affixed the ladder to the rack] without placing his hand through [a] railing and into the plane created between the dome of the ladder rack and the side of the truck.” Id. “Consequently,” the court concluded, the defendant “penetrated the interior of the truck.” Id.; see also Coleman v. State, 608 S.W.2d 923, 924 (Tex.Crim.App.1980) (concluding that the defendant broke in “by intruding ... into [a pickup] truck bed” and that “it was not incumbent upon the State to prove ... that entry must have been into the cab portion of the vehicle”); Smith v. State, 781 S.W.2d 675 (Tex. App.1989, pet. ref'd.) (reaching into bed of pickup truck to remove flares and tires constituted entry). More compelling, at least one Texas court has found “entry” into a vehicle when, as here, the burglar broke into a fixture. Soto v. State, 782 S.W.2d 17, 19 (Tex.App.1989, pet. ref'd.) (removal of tools from a toolbox attached to a pickup truck constituted entry into the vehicle). These cases cannot be reconciled with the majority’s view that a burglar can enter only the “interior space” of a building.
Lastly, the majority construes the policy to exclude coverage in order to avoid what it perceives to be two “varied and illogical outcomes.” Ante at 582.. First, the majority assumes that “[h]ad the same units been inside the building,” the plaintiffs claim necessarily would have failed because it would have been caused by “burglars already inside” the building. Id. at 582. Based on this assumption, the major: ity faults the insured’s construction of the policy because it “turns artificially on the location of the fixtures, either inside or outside the building proper.” Id. Second, the majority is unwilling to “permit coverage to turn on the discrete burglary methodology employed by the thieves,” stressing that “[h]ad the thieves' taken a crane, and lifted the units intact off the building’s roof, there obviously would have been no ‘entry.’ ” Id. I disagree with the assump *586 tion underlying the first “outcome” and the implications the majority draws from both.
I find nothing in the policy to support the majority’s assumption that coverage extends only to damage caused in the very first penetration into the building’s outermost perimeter. And I think this assumption would yield “varied and illogical outcomes.” Id. at 582. For example, imagine that an insured property contains an outer entryway into an interior courtyard or hall and that a locked door leads from the courtyard or hall farther into the building. The majority finds it obvious that the policy would cover only damage to the outer entryway, not the interior door. It asserts that each hypothetical must be understood to describe “multiple entries with each intrusion by burglars further into the interi- or of the building,” id. at 582, n. 28, presumably into the “interior space of the building as bounded by the walls, floors and ceilings,” id. at 580. I am not convinced. And how substantial must a courtyard’s “eeilin[g]” be in order to exclude coverage for damage caused to its interior doorway? What if it lacks a ceiling altogether? Similarly, imagine that valuable devices or appliances are sealed within a building’s interior walls. Under the majority’s view, damage caused by tearing into these walls could not be covered. I am not certain this assumption holds true. And what if the walls were exterior walls? Would tearing out an appliance amount to entry into the “interior space of the building as bounded by the walls, floors and ceilings?” These are issues we need not reach today, as “[njeither scenario applies here.” Id. at 580-81, n. 22. Nevertheless, these scenarios illustrate that the majority’s reasoning rests on assumptions that are in my view unwarranted.
At a more fundamental level, the majority’s requirement that coverage vary neither with the location of a fixture nor the method of its theft betrays our obligation to “strictly constru[e]” the policy “in favor of the insured in order to avoid exclusion of coverage.” Puckett, 678 S.W.2d at 938. We are to ask whether it is reasonable to construe the policy in favor of recovery in this case given the location of these units and the method of their destruction. Damage to units differently situated or more elaborately stolen might or might not reasonably give rise to liability. Cf. ante at 580-81, n. 22 (assuming that “coverage would apply to damage caused during a Mission: Impossible-style entry through an air-conditioning duct”). But this is no reason to construe the policy against the insured before the court today.
The air conditioning units at issue were destroyed when thieves “broke into the units .... to steal their copper condenser coils.” Ante at 575 (emphasis added). Liberally construing the policy in the insured’s favor, these units were part of the building, and they consequently fall within the policy’s building damage exception to its theft exclusion. I would thus affirm the judgment of the District Court.