

**NUMBER 13-08-00552-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN THE MATTER OF C. I. G., A JUVENILE

**On appeal from the 138th District Court of Cameron County, Texas, sitting as a juvenile court.**

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Memorandum Opinion by Justice Yañez

The State charged appellant, C.I.G., a juvenile, with burglary of a habitation.[1] Appellant pleaded "not true." Following a bench trial, the trial court found that appellant engaged in delinquent conduct as alleged by the State, placed him on probation for one year, and required the payment of restitution.[2] In a single issue, appellant challenges the legal and factual sufficiency of the evidence to support his adjudication of delinquent

---

[1] *See* TEX. PENAL CODE ANN. § 30.02(a)(3), (c)(2) (Vernon 2003).

[2] *See* TEX. FAM. CODE ANN. §§ 51.03, 54.04 (Vernon 2008).

conduct.[3]  We affirm.

## Background

On May 10, 2008, Irma Mercado and her grandson, J.A.R., returned home and discovered that J.A.R.'s Dell laptop computer was missing.  Mercado testified that she spoke with Benito Tovar, who rented a space "in the back" of Mercado's duplex.  Tovar told Mercado that he had seen two boys coming from the rear of the house, and that one had "something hidden" underneath his shirt.  Mercado called the police, and based on Tovar's description of the boys, directed the police to a house down the street.  The police drove Tovar to the nearby house, where appellant and numerous siblings lived.  The police brought one of appellant's siblings out to the police car, but Tovar did not recognize him. The police then brought appellant out, and Tovar identified him as one of the boys he saw running from Mercado's house.  Tovar also identified appellant at trial.

## Standard of Review and Applicable Law

Adjudications of delinquency in juvenile cases are based on the criminal standard of proof.[4]  We therefore review adjudications of delinquency in juvenile cases by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases.[5]

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found

---

[3] Appellant challenges only the legal sufficiency of the evidence supporting his adjudication.  However, he discusses the standard of review for factual sufficiency, and at one point, argues that "factually and legally, the evidence fails."  Out of an abundance of caution, we construe appellant's argument as challenging the legal and factual sufficiency of the evidence supporting his adjudication.

[4] T EX. FAM. CODE ANN. § 54.03(f) (Vernon 2008); *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex. App.–Austin 2003, no pet.).

[5] *In re M.C.L.*, 110 S.W.3d at 594; *see also In re J.O.T.*, No. 13-06-226-CV, 2007 Tex. App. LEXIS 5637, at *2-3 (Tex. App.–Corpus Christi July 19, 2007, no pet.) (mem. op.).

the essential elements of the crime beyond a reasonable doubt.[6] The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony.[7] We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for that of the trier of fact.[8] Instead, we consider whether the jury reached a rational decision.[9]

When conducting a factual sufficiency review, we view all of the evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt.[10] We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence.[11] "Although authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, a reviewing court must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence and will reverse the fact finder's determination only to arrest the occurrence of a manifest injustice."[12] Unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts

---

[6] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).

[7] *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[8] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151.

[9] *Beckham*, 29 S.W.3d at 151.

[10] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[11] *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

[12] *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

3

the jury's verdict, we will not reverse the judgment as factually insufficient.[13] In conducting a factual sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict.[14]

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge.[15] Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[16] In the present case, under a hypothetically correct jury charge, the factfinder was required to find, beyond a reasonable doubt, that: (1) C.I.G.; (2) on or about May 10, 2008; (3) intentionally or knowingly; (4) entered a habitation; (5) without the owner's effective consent; and (6) attempted to commit, or committed, theft of a laptop computer.[17] When a defendant is charged under subsection (a)(3) of section 30.02 of the penal code, the State is not required to prove that the defendant intended to commit the felony or theft at the time of entry.[18] The State must simply prove that the defendant intentionally or knowingly entered the building or habitation without the owner's consent and while inside, committed or attempted to commit a felony or theft.[19] The "entry" requirement in the

---

[13] *Watson*, 204 S.W.3d at 417.

[14] *See Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

[15] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Hernandez v. State*, 190 S.W.3d 856, 863 (Tex. App.–Corpus Christi 2006, no pet.); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

[16] *Golllihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240.

[17] *See* TEX. PENAL CODE ANN. § 30.02(a)(3); *Hernandez*, 190 S.W.3d at 863.

[18] *Hernandez*, 190 S.W.3d at 863.

[19] *Espinoza v. State*, 955 S.W.2d 108, 111 (Tex. App.–Waco 1997, pet. ref'd).

4

burglary statute is intended to protect "the interior or enclosed part of the described object, be it a house, a building or a vehicle."[20]  Guilt of the offense of burglary can be established circumstantially by the combined and cumulative force of all the incriminating circumstances.[21]

Identity can be established by either direct or circumstantial evidence.[22]  Identity may even be proven by inferences.[23]

## Discussion

In support of his argument that the evidence is legally and factually insufficient, appellant argues that "[t]his is a case of picking up the usual suspects."  Appellant emphasizes that (1) Tovar saw two boys coming out of the hallway where "the washer room" was located at Mercado's duplex, not the main part of the house; (2) Tovar saw one of the boys carrying something under his shirt, but did not know whether it was a computer; and (3) the missing laptop was not found.  Appellant relies on his own version of events, which, along with the testimony of other witnesses, we detail below.

Officer Martin Sandoval of the Brownsville Police Department testified that he responded to the burglary call.  Officer Sandoval was told that Tovar had seen two boys leaving Mercado's house, and that he believed one of the boys lived down the street.  Based on information from Tovar, Officer Sandoval went to the house, told the residents he was investigating a theft of a laptop, and that he was looking for a juvenile.  Officer

---

[20] *Wooten v. State*, 205 S.W.3d 89, 91 (Tex. App.–Texarkana 2006, no pet.) (quoting *Griffin v. State*, 815 S.W.2d 576, 579 (Tex. Crim. App. 1991)).

[21] *Hernandez*, 190 S.W.3d at 863.

[22] *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

[23] *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.–Austin 2000, pet. ref'd).

Sandoval arranged for another officer to drive Tovar to the house. A juvenile resident of the home (one of C.I.G.'s siblings) was brought outside, but Tovar said that the suspect was "shorter." Officer Sandoval then brought C.I.G. outside, and Tovar positively identified him.

Officer Saul Dominguez of the Brownsville Police Department testified that he was the "back-up" officer that drove Tovar to the suspect's house, which was about half a block from Mercado's house. Officer Dominguez testified that Tovar identified appellant.

Tovar testified that earlier in the afternoon, he saw two boys coming out of the "washer room" at Mercado's residence.[24] According to Tovar, he did not know the boys by name, and did not know where they lived, but said that he was able to identify them. Tovar testified that when the police brought the first boy out, he "told them no, that was not the one." When the second boy (appellant) was brought out, Tovar identified him. Tovar testified that he did not see the boys with a laptop computer; he only saw them running with "something under their arm." Tovar saw the boys in daylight, at a distance of about thirty feet. Tovar made an in-court identification of appellant.

Mercado testified that she returned home to find her door forced open. Her grandson's laptop computer, which had been purchased at a pawn shop, was missing. She testified that appellant was not a friend of her grandson's, but that she sometimes allowed him to come in and watch television with her grandson. She also stated that there is a park near her home, and that a lot of children live in the neighborhood. When asked what she told the police, Mercado testified as follows:

---

[24] According to Tovar, Mercado's apartment has a "hallway" where the washer and dryer are located. Tovar saw the boys running out of the hallway.

6

A: I told them what had happened and that [Tovar] identified the small child. Since I know him, he was the only one that knew that my grandson had a laptop. I went and I told them where the house was of this boy's family. I just showed them and he brought me back. He took [Tovar] and [Tovar] talked and then identified him, and that's it.

Q [the Court]: Okay. So what you're saying, if I am correct, is after you heard what [Tovar] said and after you saw what was missing, you suspected that it might be the boy that came over to your house and you knew where he lived?

A [Mercado]: Yes.

Q [the Court]: The policeman didn't just pick out some house and go to the door. He went to the one you sent him to?

A: No, I took him.

Q: Okay. [Tovar] didn't tell you, "It's the little boy that lives in that house"?

A: No. I took them to that house and then they took [Tovar] to that house.

Q: And that's because you suspected the little boy from that house?

A: Yes, because by his description.

J.A.R., Mercado's grandson, testified that appellant and two of appellant's siblings have all been at his house since he acquired the laptop. He testified that he suspected one of the siblings took the laptop, and conveyed his suspicion to Mercado before the police arrived.

Elizabeth Garza, one of appellant's teachers, testified she had given appellant an older model HP laptop computer, but that it was not in good working order. The HP laptop worked intermittently, but had some "glitches" that caused it to shut down after a few minutes.

Appellant, who was ten years old at the time of the offense, testified that on the afternoon in question, he took his own laptop and walked to Mercado's house to see if

7

J.A.R. could repair it. He stated that he carried the laptop under his shirt because his hands were sticky and he did not want to drop it. After determining that no one was home, appellant said he returned home. He stated he went to the Mercado house alone and did not see Tovar or anyone else there. Appellant testified that he told the officers he had seen two other kids running from the direction of Mercado's house.

Appellant's mother testified that on the day in question, appellant left the house with his laptop under his shirt to have it repaired at his friend's house. She also testified that her son had a laptop computer and she had invited the police officers in to view it, but they had declined to do so.

At the end of the presentation of testimony, the trial court found that "all of the elements have been met beyond a reasonable doubt."

Appellant emphasizes that (1) "at most," appellant "may have been in the wrong place at the wrong time;" (2) Tovar did not see the boys coming out of Mercado's home, but instead, saw them coming out of a hallway where the "washer room" was located; (3) a park was located nearby, and "a lot of kids usually ran about the property;" (4) no laptop was recovered; and (5) therefore, "the burden by the state has not been met."

Viewing the evidence in the light most favorable to the verdict, we conclude there was legally sufficient evidence to prove that appellant engaged in delinquent conduct as alleged by the State.[25] Furthermore, viewing the evidence in a neutral light, we cannot say that the evidence was so weak that appellant's adjudication was against the great weight and preponderance of the evidence or was manifestly unjust.[26] Accordingly, we find that

---

[25] *See* TEX. PENAL CODE ANN. § 30.02(a)(3); *Hernandez*, 190 S.W.3d at 863.

[26] *See Watson*, 204 S.W.3d at 414-15.

8

the evidence was legally and factually sufficient to support appellant's adjudication.

## Conclusion

We overrule appellant's sole issue and affirm the trial court's judgment.


_____
LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and
filed this the 31st day of August, 2009.