NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2018 KA 1006

STATE OF LOUISIANA

VERSUS

HEZZIE BICKHAM

JUDGMENT RENDERED: NOV 1 5 2019

* * * * * * *

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa • State of Louisiana
Docket Number 1302089 • Division "A"

The Honorable Jeffrey Johnson, Judge Presiding

* * * * * * *

Mary C. Hanes
New Orleans, Louisiana

ATTORNEY FOR APPELLANT
DEFENDANT—Hezzie Bickham


Scott M. Perilloux
*District Attorney*

ATTORNEYS FOR APPELLEE
The State of Louisiana

Patricia Parker Amos
*Assistant District Attorney*
Amite, Louisiana

* * * * * * *

**BEFORE: MCCLENDON, WELCH, AND HOLDRIDGE, JJ.**

JEW

(4) Holdridge J. concurs
McClendon J concurs with reasons by JEW

**WELCH, J.**

The defendant, Hezzie Bickham, was charged by bill of information with one count of simple burglary, a violation of La. R.S. 14:62. He pled not guilty. Following a trial by jury, the defendant was found guilty as charged. The trial court imposed a sentence of twelve years at hard labor. The defendant now appeals, raising two assignments of error. For the following reasons, we reverse the conviction and sentence and order the defendant discharged on the present charge.

## STATEMENT OF FACTS

In 2013, Janet Morgan had lived at her home in Ponchatoula with her husband, William "Buddy" Morgan, for thirty years. About two months before he died, Buddy, a motorcycle enthusiast, gave Janet his 2001 Electraglide motorcycle, which had one set of saddlebags attached to it, with one saddlebag on each side of the motorcycle. The motorcycle had been converted into a "trike" with three wheels so that Buddy could still use it after having a stroke. The motorcycle was kept in the driveway on the side of the house directly in front of the living room and in front of the side window. The motorcycle was always parked straight and had a motorcycle cover on it, and the saddlebags remained zipped. Janet described the saddlebags as being "pretty big" and visible from the road when the motorcycle was parked in the driveway. They were also visible when the cover was on the motorcycle. The set of saddlebags was attached on each side, and they did not have hard case covers. In these saddlebags, Buddy kept small items such as riding gloves and a battery charger.

Across from the Morgans' home was a vacant lot, where the defendant "hung out" with other men. He also walked up and down the street regularly and was known to the entire neighborhood. The Morgans greeted him regularly, and Buddy visited with him. Over the years, they encountered the defendant dozens of

2

times.

On May 1, 2013, Buddy passed away. On the night of May 9, 2013, Janet was sitting in her living room with her dog because she could not sleep. Around 12:30 a.m., through the open side window, Janet heard a sound she recognized as the rustling of the motorcycle cover. Because there was no wind that evening, she knew the wind could not be blowing the cover. She looked outside and discovered the motorcycle cover had been removed, and the defendant was "digging through" the saddlebags. The defendant was holding a white grocery bag in which Buddy used to store several items inside the saddlebags and was "digging through" it as well. Janet immediately recognized the defendant because he was facing the living room window and was only about ten feet away; additionally, there were streetlights illuminating the area.

Janet picked up her cordless phone to call the police, but dropped it on the hardwood floor. Because she knew the defendant had heard the sound it made, she grabbed her dog by its collar and walked outside through the front door to make sure the defendant knew she had seen him. The defendant walked back to the vacant lot without looking at or speaking to Janet. After Janet returned to her house, she called the police, who responded quickly. Upon inspection, the motorcycle had been moved from where it was parked and the saddlebags unzipped, but Janet was not sure what items had been taken because she did not know what her husband had stored in the motorcycle's saddlebags. Part of the motorcycle cover rested on the windshield, although the rest of the motorcycle was uncovered. The motorcycle itself was undamaged. The police did not take any fingerprints off the motorcycle cover or the saddlebags because Janet had already made a positive identification of the defendant as the person she had seen rifling through the saddle bags' contents; therefore, identity was not at issue.

Janet was "shocked" she had caught the defendant going through the

3

motorcycle because the defendant had previously offered to help her and Buddy while Buddy was ill, and Janet thought he "seemed like a nice guy." She testified that she had never given the defendant permission to go through her belongings, including the motorcycle.

## SUFFICIENCY

In his first assignment of error, the defendant claims that the evidence was insufficient to convict him of simple burglary. He claims that the State failed to prove the element of "entering" in La. R.S. 14:62. Specifically, he points out that under **State v. Pierre**, 320 So.2d 185 (La. 1975), La. R.S. 14:62 requires proof of an unauthorized entry into "an enclosure." He further argues that La. R.S. 14:62 "does not require that the entry be into a part of the vehicle which is capable of, or designed to, accommodate a person."

The defendant claims that there is no jurisprudence on whether a person can commit a simple burglary by "entering" a compartment that has been attached to the exterior of the vehicle. The defendant further claims that because the saddlebags were attached to the exterior of the motorcycle, they were not an "integral part" of the vehicle, like a trunk, hood, or passenger compartment. The defendant claims that his case is factually distinguishable from **Pierre**, where the compartment that was opened was an "integral part" of the vehicle—*i.e.*, the hood—and was not a "mere accessory" attached to the exterior of the vehicle as in his case. We agree.

The constitutional standard for testing the sufficiency of the evidence, as enunciated in **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim. P. art. 821. In conducting this review, we also must be expressly

4

mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438; **State v. Crowson**, 2010-1283 (La. App. 1st Cir. 2/11/11), 2011 WL 2135102 at *6 (*unpublished*), writ denied, 2011-0528 (La. 11/23/11), 76 So.3d 1146.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Forrest**, 2016-1678 (La. App. 1st Cir. 9/21/17), 231 So.3d 865, 870, writ denied, 2017-1683 (La. 6/15/18), 257 So.3d 687.

Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60. La. R.S. 14:62(A).

Criminal statutes must be given "a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3. Moreover, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. **State v. Toups**, 2013-1371 (La. App. 1st Cir. 4/3/14), 144 So.3d 1052, 1056. Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the statute. **Id.** In construing the applicable criminal statute, we consider two established rules

5

of statutory construction: (1) all criminal statutes are construed strictly; and (2) the words of a statute must be given their everyday meaning. **Id.**

No Louisiana jurisprudence exists that addresses the specific factual issue at hand; however, we find two cases from other states instructive. In **Griffin v. State**, 815 S.W.2d 576, 579 (Tex. Crim. App. 1991) (en banc) (per curiam), the court held that removing the hubcaps or tires attached to the outside of a car, when no entry into any enclosed portion of the car is made to effectuate that taking, was not burglary of a vehicle. The court explained that there must be a "breaking of the close" for there to be entry in the sense established for burglary and that the protection is to the interior or enclosed part of the described object. "Taking items attached to the outside of the vehicle, house, or building that does not reflect an entry *into* an interior or enclosed part of the described object in order to steal does not constitute the offense of burglary." **Id.**

Additionally, in the case of **In re Young K.**, 49 Cal.App.4th 861, 864 (Cal. Ct. App. 2d Dist. 1996), the court held that because unlike a car's interior or its trunk, headlamp housings can be "entered" without regard to whether the car is locked, the removal of headlights was similar to the removal of windshield wipers or hubcaps and therefore constituted theft, but not burglary. *Cf.* **Toups**, 144 So.3d at 1056-57 (finding the defendant guilty of simple burglary by removing gas from, and thereby entering, the fuel tank of a watercraft).

Therefore, as a matter of first impression, we find that the evidence is insufficient to establish that the defendant entered the Electraglide motorcycle within the meaning of La. R.S. 14:62(A). Because the saddlebags are similar to hubcaps or headlights in that they are not integral parts of the interior of the motorcycle, the defendant's actions did not reflect an entry into the interior of the motorcycle to establish burglary. Therefore, we reverse the defendant's conviction and sentence.

6

This assignment of error has merit. We therefore pretermit discussion of the defendant's second assignment of error.

For all of the above and foregoing reasons, the defendant's conviction and original sentence is reversed, and we remand this matter to the trial court.

**CONVICTION AND SENTENCE REVERSED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 KA 1006


STATE OF LOUISIANA

VERSUS

HEZZIE BICKHAM

*************************************************

*BMC by JEW*

McClendon, J., concurring.

Based on the facts presented, I concur in the result reached by the majority.