John ALEXANDER, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–246 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Nov. 4, 1993.

Decided April 13, 1994.

Rehearing Overruled May 19, 1994.

Thomas Chambers, Liberty, for appellant.

Michael Little, Dist. Atty., Steve Greene, Asst. Dist. Atty., Liberty, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This is an appeal from a conviction for the felony offense of burglary of a building with the intent to commit theft. The appellant pleaded not guilty to the charge of burglary; the jury found the appellant guilty. On October 8, 1992, the trial court found the enhancement paragraphs of the indictment to be true and sentenced the appellant to forty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice. The judgment of the trial court is affirmed.

## Statement of the Facts

On June 27, 1991, at about 10:30 p.m., Officer Timothy Allison was on patrol headed eastward on Beaumont Avenue in the City of Liberty. As he approached the intersection of Beaumont Avenue and Davidge, he observed two individuals, one of whom he identified as the appellant, carrying a window air-conditioning unit. Deputy Allison went around the block to question the two individuals about the window air-conditioner that they were carrying. However, they no longer had the air-conditioner. Deputy Allison walked back to the area near the intersection where he had first seen the two individuals carrying the air-conditioner. The deputy found the air-conditioning unit placed against a tree.

When Liberty Police Officer Tom Chapman arrived, Deputy Allison walked across the street. After crossing the street, the deputy found the building where an air-conditioning unit had been located. The building had an open window. Upon investigating, the deputy saw through the open window a front cover of an air-conditioning unit laying on the floor inside the building. The air-conditioning unit was found across the intersection from the building. When Deputy Allison looked inside the building from the outside of the window, he also noticed that a table appeared to be out of place. Furthermore, the deputy noticed three pry marks on the window frame.

Officer Bruce Oliphant, another Liberty police officer, arrived at the scene of the offense. The building in question was known as Hair By Sue, a hair salon. Prints were lifted off the air-conditioning unit; several fingerprints were identified as those of the appellant by the district attorney's investigator.

When Officer Oliphant testified about his investigation of the scene and upon examination of the window frame, where the air-conditioning unit had been located, he discovered that a piece of plastic molding still in the window frame appeared to have been broken out when the unit was removed at an angle facing *downward into the building*. This is evidence of an entry and an intrusion. Officer Oliphant identified the other individu-

al who was with the appellant as Freddie Lee Burnell. Officer Oliphant testified that there were signs of forced entry into the building at the window.

Upon cross-examination by the appellant's attorney, Officer Oliphant testified that he saw sufficient evidence to show that someone's hand and arm had been in the building in order to unplug the unit after it had been removed from the window. Officer Oliphant testified that based on the angle of the unit's framing that was left in the window frame, he determined that a person had to intrude part of their body or an object connected thereto into the building to get the air-conditioning unit out at that angle and to remove it.

The owner of Hair By Sue was Susan Sanders. Ms. Sanders testified that normally her business closed between 6:00 and 6:30 p.m. each day. On June 27, 1991, she recalls that upon closing around 6:30 p.m., she had two window air-conditioning units in her business establishment. On that night, when the police called her to inform her of the burglary and when she arrived at her business, she noticed that one of her units was gone. She saw the air-conditioning unit across the street. Ms. Sanders stated that normally the window where the air-conditioning unit was located was nailed in position. She said sticks were placed in the window frame to keep the unit in place so that the metal lip on the air-conditioning unit would be positioned inside the window. Further, she testified that the plug on the air-conditioning unit was just a little bent; but, she was still able to plug it in and use the unit. Ms. Sanders testified that the window was still intact and that there was no way the air-conditioning unit could have been pulled straight out without it being handled and jostled from the inside.

The next witness to testify for the State was Freddie Burnell. Burnell was the individual arrested with the appellant. He testified that the appellant had told him about the air-conditioning unit and suggested to him that they could make some quick money. This conversation happened around 4:00 or 4:30 p.m. on the afternoon of June 27th.

They proceeded to take the air-conditioning unit later that evening.

The appellant has presented to this Court one point of error which avers that there is insufficient evidence to convict the appellant of burglary because the State has not proved that the appellant entered a building, an essential element of the offense of burglary.

■ When the appellate courts are asked to review questions of sufficiency of the evidence, it is well settled that the appellate courts must look at all the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the necessary elements of the crime beyond a reasonable doubt. *See Marroquin v. State,* 746 S.W.2d 747 (Tex. Crim.App.1988).

■ The Texas Penal Code, section 30.-02(a)(1) defines burglary. This section, in relevant part, provides that a person commits the offense of burglary if, without the effective consent of the owner, the person enters a building (or any portion of a building) not then open to the public with the intent to commit a felony or a theft. "Enter" has been defined in sec. 30.02(b) as the intrusion of any part of the body or *any physical object connected with the body.* We hold the unit was "any physical object connected with the body." The gist of burglary is the entry with the requisite intent.

■ Burglarious entry may be shown by circumstantial evidence. *Jones v. State,* 458 S.W.2d 89 (Tex.Crim.App.1970). The testimonies of Officer Oliphant and owner Susan Sanders proved entry.

The appellant's contention is that there was no entry. We must disagree. In the instant case, it must be emphasized that the air-conditioning unit was not only positioned on the outside of the building but an important working part of this unit was on the inside. Hence, in order to remove the unit from the window at the angle of removal, there must have been some interior action on the part of the appellant and his cohort to effect removal of the unit at such downward angle.

We hold, inasmuch as the appellant's fingerprints were definitely on the unit, that the stolen air-conditioning unit itself was, under sec. 30.02(b), a physical object connected to the body of John Alexander.

The appellant has ignored cases in which the Court of Criminal Appeals has held that entry may be shown by circumstantial evidence. *See Clark v. State,* 543 S.W.2d 125 (Tex.Crim.App.1976). Some examples where the Court of Criminal Appeals has held entry was committed are: (1) the removal of items from the bed of a pickup truck constituted burglary, of a vehicle, *Coleman v. State,* 608 S.W.2d 923 (Tex.Crim.App.1980); (2) pry marks on the wooden door constituted entry, *Ortega v. State,* 626 S.W.2d 746 (Tex.Crim. App.1981); and (3) the cutting of a hole in a building, although not making a bodily entry, constitutes burglary, *Turner v. State,* 165 Tex.Crim. 106, 303 S.W.2d 386 (App.1957). We hold that by direct and circumstantial evidence appellant's entry has been substantiated.

### *The Entry and Intrusion Issues Revisited*

We hold that the removal of the air-conditioning unit itself was an entry and an intrusion. Prior to the event in question, the air-conditioner served as and was an integral part of a solid wall. After the unit was removed, a gaping hole existed destroying the integrity of the wall. This removal constituted an intrusion into the wall as well as an entry. We hold that the air-conditioning unit itself was an object and qualified as any extension to the body of the appellant.

We hold that the evidence is clearly sufficient showing that there was an actual pushing in—that is interior—towards the interior of the house of a part of the air-conditioning unit in order that it could be removed and an asportation took place by then transporting the unit away from the window and across the street. We hold that the demonstrative evidence and the pictorial evidence demonstrates that a part of the unit which was interior to the building was dislocated and fell to the floor inside the place of business.

■ Hence, we hold that this evidence constituted an intrusion and an entry. Sig-

nificant and of paramount importance is the language stating that a physical object that is attached to the body can, and in this case does, make an entry. *See* TEX. PENAL CODE ANN. § 30.02(b)(2). We hold that the opening up of a large hole in a wall, even if affected and brought about by the removal of the unit strictly by way of an exterior movement—that, nevertheless, the hole and the break and the opening in the wall constituted an intrusion and an entry under sec. 30.02. *Note that the evidence discloses an interior or front part or cover of the unit that was laying on the floor inside the place of business.* This piece had previously been connected to the unit. Thus, an entry and an intrusion—both took place, the reason being such front piece was "any object connected to the body". Likewise, we hold that the testimony concerning the moved table overrules the contention of the appellant that there was no intrusion and there was no entry. The fact that the electrical plug had been removed from the electrical outlet demonstrates that the plug had to be moved interiorly as to the place of business thereby constituting an intrusion and an entry. The movement was toward the inner part of the business.

Definite, cogent evidence reveals that one officer approached the opening in the wall of the business establishment and looked inside. He could tell that the radiator vent, the front part of the air-conditioning unit, was laying inside of the building. Then, this same officer found that there was a wooden brace that is ordinarily and typically used to hold up the window or air-conditioning unit located such as this one was located. Certain plastic parts are used to cover any gap or extra space and make the window secure and completely closed in. The dislocation of these plastic inserts made proof of an intrusion and an entry. State' Exhibits 2, 3, 4, 5, and 7 were offered. The defense attorney affirmatively announced "No objections" and these State's Exhibits were admitted into evidence. Specifically State's Exhibit No. 7 shows the plastic window insert that is used to take up any extra space or room in the window area. This exhibit also showed the T-brace that holds up the unit.

State's Exhibit No. 8 and 9 were admitted without objection. This same officer on cross-examination testified that there was one table that appeared to be under the air-conditioner that was moved out to the middle of the room. Again, upon cross-examination the officer testified that a piece of the air-conditioner was lying on the interior part of the building on the floor and it looked like it had fallen to the floor interiorly. The officers then gave testimony that there were three marks along the top part of the window that were unusual. The officer noted that the table was close to the front door.

A second officer, Bruce Oliphant, testified. Oliphant testified about certain fingerprints that were taken off the air-conditioning unit. These prints were identified as being prints of the appellant. This officer testified, at some length, concerning a piece of plastic molding that had been originally attached to the unit and was also attached to the window frame in an attempt to keep the air-conditioning unit in place. This plastic molding had been broken when the unit was removed. On this phase of the evidence the record showed that the location of this plastic molding demonstrated that the unit would have been facing in a downward angle into the building. This officer definitely testified that on the inside portion of the building, as you would approach the inside of the building through the front door, there were pieces of the air-conditioning unit itself which he described as the front grate. Again, on cross-examination this same officer testified that he discovered parts of the air-conditioner itself and parts of the plastic molding that were inside of the building. These objects were located on the floor. Hence, we hold that an intrusion and an entry were proved. The record also showed that this officer testified that he saw signs of force and forced entry at the window which he described as then being the open window. Then this officer testified:

Q (By Mr. Chambers) Did it look like any pry bars had been used on the window?

A I couldn't make that determination.

Q Did you see any signs or evidence that a person had been in that building when they weren't supposed to be?

A   Based on past experience and my ability and knowledge, I saw sufficient evidence to lead me to believe that a portion of someone had been in that building during the commission of this crime.

Q   What portion of someone was in that building?

A   Most likely appearing to me to be someone's hand and arm.

Q   Someone stuck their hand and their arm in the building?

A   That was my belief.

Q   That's just pure speculation, isn't it?

A   Physical evidence supports that belief. There were no prints, there were no palm prints obtained from inside the building. There was no absolute physical evidence.

Q   So you think someone struck their arm in the building?

A   Yes, sir, through the open window.

Q   The air conditioner was there?

A   At one point it was.

Q   How much of their arm?

A   Elbow. Enough to reach the end of the plug on the air conditioner to remove it from the wall plug in the inside of the building.

Q   It could have been pulled out, anyway, couldn't it?

A   Not in my opinion, no, sir.

Q   And that's what you're basing you conclusion on?

A   Yes, sir.

Q   So you feel there was an entry based on the fact that the air conditioner had a plug on it?

A   And based upon the location of the wall plug on the inside of the building, yes, sir.

Then at this point, State' Exhibit No. 6 was admitted into evidence. No objections were lodged against it. This Exhibit No. 6 showed pieces of the air-conditioning facing, the grill and the vents, and Exhibit No. 6 was taken from the inside of the building looking towards the open window. The objects were on the floor inside of the building. By means of an unobjected-to State's Exhibit No. 13, the location of the wall plug on the inside of the building was established. When asked concerning the position of the window frame and certain pieces of the air-conditioner itself, this officer testified:

A   Yes, the position of the window frame and a piece of air conditioner framing that is left attached to that window and broken off of the air conditioner would indicate that someone lifted the air conditioner from the bottom up, which would tilt the air conditioner down towards the floor to remove it from the window.

Based on that, someone would have to—or a portion of someone's body or an object would have to enter that building to get that air conditioner at that angle to remove it.

Thus, the top of the air-conditioner was thrust interiorly in order that it could then be backed out of the window. The owner of the beauty salon testified. She had been called to the scene that night. She identified the air-conditioning unit that was across the street as being hers. She testified that previously it had been secured by being nailed into the window and the window itself was nailed shut and then boarded at the top. This lady proprietor testified that when she left her place of business at about 6:00 or 6:30 p.m. the air-conditioner was in place and was nailed in place and that two other objects were holding it in place. These objects were two sticks keeping the window from being lifted. This proprietor testified about the conditioning and the securing of the unit in detail. She testified that it was nailed along the bottom and that it was held securely in place. It had casings on the sides. These casings were metal and that there was a metal stripping on the top of the unit. This metal stripping flipped over the front part of the window—that is to say the inside part of the window. The window itself comes down behind the metal stripping.

She stated that when she arrived at her business after being notified by a telephone call of the events that there was very little parts of the air-conditioning unit or the frame that was still in the window space. The frame had been nailed into the window.

The unit had been plugged into the wall but the plug was at the end of a line which was located on the left side of the unit but stretched across the unit to the right to reach the electrical outlet. She testified that after she got her air-conditioning unit back that night, that she notified that the plug was bent a little bit. The owner was asked this question:

Q Is there any way that that air conditioner unit could have just been pulled straight out without it being maneuvered around inside—

A No, sir.

Q —the opening?

A No, sir.

Immediately after her testimony, the prosecution announced that the State rested.

In reviewing the record in this case, we conclude that a burglarious entry did occur in light of the pry marks on the window, the table being out of place, the front of the unit being found on the floor inside the building, the condition of the unit plug coupled with the location of the electrical outlet plus the fact that the window was nailed in such a manner as to keep the unit from being pulled straight out. Such evidence and such an entry is sufficient to constitute "entry" under TEX. PENAL CODE. ANN. § 30.02.

John Alexander was charged as a party and under the law of parties in this felony prosecution. Alexander was criminally responsible for the burglary offense committed by the conduct of another person. Under the law of parties his conviction is properly affirmed.

We find that the evidence clearly indicates that the appellant, as well as his accomplice, used the air-conditioner itself to intrude into the building in order to lift the unit out and then to remove the plug. Necessarily, we find that the evidence was sufficient beyond a reasonable doubt to support the jury finding that the appellant entered the building.

The concurring opinion charges that under the majority's theory a theft automatically becomes a burglary any time the theft is of an object that is partially outside the building and partially inside the building. Clearly not so. Fairly read and on balance, the majority opinion has demonstrated an interior movement of the air-conditioning unit toward the inside of the building. Clearly this is not a mailbox or a window shutter case. Again, the example used in the concurring opinion: "that the shutter is attached with screws sufficiently long to penetrate through, that is, the screw is both outside and *inside* the building"; then, it is charged that the majority has made the simple removal of the screws the valid basis of a burglary. Again, not so. In this example of the long screws there is no forward, interior movement towards the inside of the building. The other opinion's examples are simply not analogous to the record before us.

If, however, to remove the shutter, it was necessary and feasible to turn the screw to the interior of the building so as to release the shutter, an intrusion and entry would have been performed. The other opinion concedes that entry has been defined as "an intrusion into". We think that "an intrusion into" an interior movement of the unit towards the inside of the building has been clearly shown by the evidence.

The concurring opinion cites *Griffin v. State*, 815 S.W.2d 576 (Tex.Crim.App.1991). In *Griffin*, the court held that the gist of burglary is an entry with the prerequisite intent. Case law and the definition of "entry" had long been established as meaning *an intrusion into* the house or building. We maintain the record shows an entry and certainly a further intrusion into the interior of the beauty shop. In *Griffin*, the court cited with approval a case involving the kicking in of a window and reaching inside as constituting a burglary. We think *Griffin* is compatible. In *Griffin*, the court simply held that the taking of tires and hubcaps did not constitute burglary of a vehicle because there was no entry into any part of the vehicle; but, *Griffin* also held that the taking of something from inside the vehicle or the inside of the hood or from the interior of the vehicle would establish a burglary. The court further reasoned that there should be a "breaking of the close" to have an entry to establish a burglary. Here, undoubtedly, the accused committed a "breaking of the close". We, therefore, definitely think that a burgla-

ry was committed because the legal protection is to the interior or the enclosed part of a described structure whether it be a house, a building, a habitation, a beauty shop, or a vehicle. *Griffin* and its reasoning are not contrary to this opinion. This air-conditioning unit was not merely attached to the outside of the beauty shop. The air-conditioning unit was also attached to the inside or the interior of the shop. Hence, there was an entry into the interior or closed part of the building—there was most definitely a "breaking of the close."

*We definitely hold that the stolen air-conditioning unit can and does constitute a physical object attached to the body.*

We overrule appellant's point of error and affirm the judgment of the trial court.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. The majority expends a great deal of time and effort convincing themselves, and the readers, that the object which was stolen became a physical object attached to the body, thus an extension of the thief/burglar's arm, therefore the legal definitions of intrude and entry were met. This exercise was unnecessary and makes bad law. There is ample evidence to support the conviction without resorting to this analysis. The majority quotes directly from the record where Officer Oliphant testified, without objection, to his belief that someone's hand or arm went into the building. The majority could have affirmed the conviction on this testimony alone.

Under the majority's theory, a theft automatically becomes a burglary anytime the theft is of an object which is partially outside a building and partially inside a building. Our Court of Criminal Appeals has said: "Stealing ·a mailbox or a window shutter attached to the side of a house would not be entry so as to constitute burglary." *Griffin v. State,* 815 S.W.2d 576, 579 (Tex.Crim.App. 1991). Not necessarily! If the shutter thief is so unlucky that the shutter is attached with screws sufficiently long to penetrate through, that is, the screw is both outside and *inside* the building, then, under this decision, the removal of the screw makes the thief a burglar. If the shutter thief removes a brass "peep hole" from the front door by prying it from the outside—a burglary. Entry has been defined as an intrusion *into, Id.* at 579. Only now can an intrusion result from a removal of the object itself. The majority is quite clear and definite that they are not relying upon any object other than the stolen air conditioner as the physical object attached to the body. This is *not* a crow-bar, screwdriver, pry-bar, knife, stick, auger, drill or any other burglar tool case. This could have been a simple "hand or arm" in the building case. The majority chose not to treat it as such. Therefore, I must simply concur in the result.