

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00449-CR

Edwing Ahmed **ALVAREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2016CRJ001220D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  August 1, 2018

AFFIRMED

Appellant Edwing Ahmed Alvarez was found guilty by a Webb County jury of burglary of

a habitation as alleged in the indictment.  The trial court subsequently sentenced Alvarez to twenty-

five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Alvarez raises two issues on appeal: (1) the evidence is insufficient to support the jury's verdict

and (2) the trial court erred in allowing the testimony of the State's fingerprint expert in violation

of Texas Code of Criminal Procedure article 39.14(b).  *See* TEX. CODE CRIM. PROC. ANN. art. 39.14

(West Supp. 2018).  We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Testimony by the Laredo Police Department Officers

On July 15, 2016, at approximately 4:24 p.m., Laredo Police Department dispatch received a call regarding a burglary in progress at 505 East Fremont, Laredo, Texas. Officer Juan Morales, the first officer on the scene, arrived within three minutes. Officer Luis Becerra also responded to the call to assist the officers and was the first officer to make contact with Alvarez. Officer Becerra located Alvarez walking westbound in the 300 block of East Fremont matching the description provided by dispatch: a male individual, wearing a black muscle shirt and pajamas, pushing a shopping cart with a large flat-screen television in the cart.

Officer Becerra testified that while he detained Alvarez and waited for the other officers to arrive, Alvarez made an unsolicited statement that the television in the shopping cart belonged to him. When Officer Becerra advised that Alvarez was detained, Officer Morales left the residence for 300 East Freemont. Officer Morales took possession of the television and both officers returned to the residence in question. Officers Becerra and Morales both identified Alvarez as the individual detained and arrested on July 15, 2016.

Officer Alex Leal, the third officer dispatched, testified that it was obvious someone had entered the residence through an open, lift-window on the porch. Both the front and back door of the residence were locked. Officer Leal climbed through the open window and unlocked the front door for Officer Morales. The house appeared to be ransacked; property was moved and thrown on the ground. The officers secured the residence and Officer Morales contacted Julia Garcia, the owner of the residence, who was driving to Tyler when she spoke to Officer Morales. Officers began processing the scene—taking photographs, fingerprints, and collecting evidence. Six latent fingerprints were collected from the residence.

Officer Albert San Miguel, an officer assigned to the identification section, testified regarding the latent prints collected at the Garcia residence and his comparison to Alvarez's known prints. Officer San Miguel testified the latent print, found on the front-left of a chest of drawers in Garcia's house, was consistent with the known fingerprint of Alvarez's left-middle finger, to a reasonable degree of scientific certainty. On cross-examination, defense counsel questioned Officer San Miguel regarding fingerprint errors made by elite law enforcement agencies. Defense counsel noted that, even in this case, the first time Officer San Miguel made the comparison, he only identified eight matching points between the two fingerprints. But, during the second comparison, Officer San Miguel identified fifteen matching points. On redirect, Officer San Miguel explained the difference between the two comparisons was that he obtained a better quality known-print of Alvarez's left-middle finger for comparison which accounted for the difference in the number of matching points. The technique and procedure utilized were exactly the same. Better fingerprint samples, the officer explained, provided better comparison points for identification. Officer San Miguel's findings were verified by Officer Juan Alfredo Villarreal, who testified he also concluded the fingerprint on the chest of drawers matched Alvarez's left-middle finger.

## B. Testimony by other Witnesses

Jose Rocha, Garcia's neighbor, approached Officer Becerra's vehicle and identified Alvarez as the individual he saw at the Garcia residence. Based on Jose's statement, Officer Morales instructed Officer Becerra to transport Alvarez to the police department for further investigation. Jose testified that he saw Alvarez at the Garcia residence on July 14th, just standing in front of the house. He was wearing the same clothes as he was the following day, and that was one of the reasons Alvarez caught Jose's attention. On July 15th, Jose saw Alvarez trying to procure entry through Garcia's fence. Jose saw Alvarez a second time, that same day, on the

Garcia porch. "[Alvarez] had items already there stacked on a chair, like a TV, and he had one of those grocery push carts on this side of the fence, on the side street." Jose watched Alvarez pick up the television, walk outside the fence, set it in the grocery cart, and walk off pushing the cart. That was when Jose asked his wife to call 911. Jose identified Alvarez as the individual he saw at the residence on July 14th and July 15, 2016.

Jose's son, Hector Rocha, also testified and identified a picture he took on his cellphone at 1:21 p.m. on July 15, 2016, showing an individual wearing a muscle shirt and pajamas entering the Garcia property by the fence. Hector testified he saw Alvarez on Garcia's porch later that same afternoon. Hector originally thought Alvarez might be there to cut Garcia's grass. About three hours later, Hector was in the house with his father when they saw Alvarez pushing a grocery cart carrying a flat-screen television. That was when they called the police department.

Jose Velasquez, the manager at the EZ Pawn located approximately two blocks from Garcia's residence, testified that Alvarez came into the pawn shop on July 15, 2016, and pawned an air conditioner unit. Velasquez identified the EZ Pawn receipt bearing the name Edwing Ahmed Alvarez, on July 15, 2016, at 2:19 p.m.; the air conditioner window unit was pawned for thirty dollars. The receipt also provided a full description of the air conditioner unit and Alvarez's address. Velasquez testified that Alvarez came into the store twice that day. He also wanted to pawn a flat screen television. However, because the front of the television was shattered, Velasquez did not take it. Velasquez identified Alvarez as the same individual who pawned the air conditioner and attempted to pawn the television with the shattered front glass.

When Garcia returned home, she reported the air conditioner, several purses, three flat-screen televisions, a graduation ring, assorted jewelry, and three gallon-sized jugs of coins were missing. One of the televisions and the air conditioner were recovered; however, both were damaged.

**C.      Verdict**

The State rested its case-in-chief.  The trial court denied Alvarez's motion for directed verdict and the defense rested.  After closing arguments, the jury returned a guilty verdict.  The trial court subsequently assessed punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

We turn first to Alvarez's contention the evidence is insufficient to support the jury's conviction.

SUFFICIENCY OF THE EVIDENCE

**A.      Standard of Review**

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence. . . ." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746.  The reviewing court must also give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*. (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence.  *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  We defer to the jury's responsibility to fairly resolve any conflicts in the evidence, weigh the evidence, and

draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13. The jury alone decides whether to believe eyewitness testimony, and it alone resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 13; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

## B.      Arguments of the Parties

Alvarez contends the evidence is insufficient to support the jury's conviction for burglary of a habitation because a rational jury could not find beyond a reasonable doubt that Alvarez entered the habitation as alleged in the indictment.

The State counters there is ample evidence, both direct and circumstantial, upon which the jury could rationally infer Alvarez's entry into the residence.

## C.      Burglary of a Habitation

Texas Penal Code section 30.02(a)(1) provides that a person commits burglary of a habitation if, without the effective consent of the owner, the individual enters the habitation with the intent to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West Supp. 2018). A person "enters" a habitation if he intrudes any part of his body, *or any physical object connected to their body. See id*. § 30.02(b) (emphasis added). "'Entry' is established when the plane of the opening of the house is broken, and may be accomplished by placing a foot inside a door frame, by cutting window or door screens, or by breaking a door lock or frame." *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd) (citing *Ortega v. State*, 626 S.W.2d 746, 747 (Tex. Crim. App. 1981) (concluding there was "entry" when evidence showed screen door latch was pulled off, wooden door's knob was disabled, and pry marks were on wooden door)).

**D.    Analysis**

We begin our analysis with the evidence pertaining to the air conditioner.  Velasquez testified Alvarez brought Garcia's air conditioner into the pawn shop at 2:19 p.m. on July 15, 2016, and the item was pawned for thirty dollars.  Garcia later identified the air conditioner as the unit that was affixed to her front bedroom window.  In *Wooten v. State*, 205 S.W.3d 89, 91 (Tex. App.—Texarkana 2006, no pet.), the State's case turned on an air conditioner sitting on a window ledge, but not permanently attached to the house.  The appellate court concluded,

> It is clear that, in removing the air conditioner from the window, [the appellant] necessarily "broke the close" into the house.  The air conditioner, or some part thereof, intruded into the interior of the house.  It is a physical object that was obviously connected to [the appellant's] body when he removed it from the window.  Hence, his taking of the air conditioner constituted an "entry," as defined by Section 30.02(b).

*Id.*; *see also Alexander v. State*, 873 S.W.2d 793, 794–95 (Tex. App.—Beaumont 1994, pet. ref'd) (concluding an air conditioning unit removed from the building was "any physical object connected with the body" under section 30.02).  In *Wooten*, the prosecutor elicited testimony that the air conditioner was plugged in "a good distance from the window," and a jury could reasonably conclude a portion of his body intruded into the house to unplug the air conditioner for removal.  *See Wooten*, 205 S.W.3d at 91–92.  Although in this case the prosecutor did not specifically ask Garcia whether the air conditioner was plugged into the wall, Garcia testified the air conditioner was working and was returned in a damaged state.  We conclude a jury could have reasonably concluded that some portion of Alvarez's body had to intrude into Garcia's residence, specifically the bedroom, to remove the unit from the window, and presumably to unplug the air conditioner.  *See id.*; *Alexander*, 873 S.W.2d at 796 ("The fact that the electrical plug had been removed from the electrical outlet demonstrates that the plug had to be moved interiorly as to the place of business thereby constituting an intrusion and an entry."); *see also Williams v. State*, 997 S.W.2d 415, 417

(Tex. App.—Beaumont 1999, no pet.) ("[T]he action of breaking the lock and door frame was the 'breaking of the close'").

Jose saw Alvarez at Garcia's residence looking suspicious, on July 14, 2016. The following day, both Jose and Hector witnessed Alvarez gain access to Garcia's property through her fence and then on her porch with various possessions from the residence. Hector even authenticated a picture he took of Alvarez at the Garcia residence three hours before Alvarez was detained with Garcia's television. Garcia testified three televisions were taken from inside her residence. She only recovered the television taken from the grocery cart being pushed by Alvarez when he was detained by Officer Becerra. Velasquez testified a second television was brought into the pawn store a couple of hours earlier, but the front glass was shattered. A reasonable jury could infer Alvarez necessarily entered the residence to procure possession of the televisions. *See Hooper*, 214 S.W.3d at 13 (requiring deference to the jury's ability to draw reasonable inferences).

Lastly, Officer San Miguel, an officer assigned to the fingerprint analysis team, testified regarding the fingerprints collected from the Garcia residence. Officer San Miguel opined, that to a reasonable degree of scientific certainty, the fingerprint the officers lifted from the front-left of Garcia's chest of drawers was consistent with the known fingerprint of Alvarez's left-middle finger. Based on the fingerprint evidence, a reasonable jury could have concluded Alvarez necessarily entered the residence for his fingerprint to be on Garcia's chest of drawers. *See id*.; *Young*, 358 S.W.3d at 801 (reiterating appellate courts do not re-evaluate weight and credibility of the evidence).

An appellate court must consider all of the evidence in the light most favorable to the jury's verdict, *Adames*, 353 S.W.3d at 860, and afford deference to the jury's role to draw reasonable inferences from the testimony and evidence, *Hooper*, 214 S.W.3d at 13. We are further cognizant that no one factor controls, and it is the cumulative force of all the evidence, both direct and

circumstantial, upon which the jury's verdict is based. *See id*. Based on the entire record, we conclude a reasonable jury could have found each of the essential elements of burglary of a habitation beyond a reasonable doubt and we overrule Alvarez's sufficiency issue.

We next turn to Alvarez's contention the trial court abused its discretion in denying his objection to the State's failure to disclose the name and address of the State's fingerprint comparison expert, Officer Juan Villarreal.

## EXPERT WITNESSES AND ARTICLE 39.14(b)

### A. Arguments of the Parties

Alvarez contends the State violated article 39.14(b) by not timely disclosing one of its expert witnesses. He argues that because the State failed to comply with article 39.14(b), the trial court erred in overruling his sworn motion for continuance and allowing the expert to testify regarding fingerprint analysis results.

The State counters that Alvarez did not file a motion or notice for disclosure of experts and Officer Villarreal was listed on a supplemental notice within twenty days of trial.

### B. Texas Code of Criminal Procedure article 39.14

Texas Code of Criminal Procedure article 39.14, or the Michael Morton Act, provides that the State must, upon the defendant's request, allow the defendant access to reports, statements, and other documents in the State's possession that do not constitute work product. *See id*. Article 39.14(b) further provides that

> On a party's request made not later than the 30th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin, the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence.

*Id*. art. 39.14(b).

**C.     Analysis**

Because Alvarez's motion for continuance turns on the trial court's admission of Officer Villarreal's testimony, we first address whether the trial court erred in allowing his testimony.

*1.     Trial Court's Admission of Officer Villarreal's Testimony*

a.     Standard of Review

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). More specifically, "[i]f the trial court allows a witness who was not on the State's list to testify, we review that decision for an abuse of discretion." *Hamann v. State*, 428 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). An appellate court will uphold the decision provided that the trial court's decision, when viewed "at the time the ruling was made," *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.), "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Brito-Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *see also Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002) ("If there is evidence supporting the trial court's decision to admit evidence, there is no abuse and the appellate court must defer to that decision. Even when the trial judge gives the wrong reason for his decision. . . ." (citations omitted)). Under our abuse of discretion review, *see Martinez v. State*, 131 S.W.3d 22, 29 (Tex. App.—San Antonio 2003, no pet.), we will uphold the trial court's admission of the evidence if "the decision [was] correct on any theory of law applicable to the case." *See Osbourn*, 92 S.W.3d at 538.

b.    Application of Article 39.14(b)

Based on Alvarez's filing of his article 39.14(b) motion on November 8, 2016, the State was required to disclose, no less than twenty days before the start of trial, the name and address of any expert witness the State planned to call. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. The appellate record indicates Officer Villarreal first appeared on the State's witness list on April 27, 2017, less than twenty days before trial.

On May 8, 2017, the day the matter was called for trial, Alvarez sought to exclude the testimony of Officer Villarreal arguing the State's notice regarding Officer Villarreal violated article 39.14. *Id.* In determining whether the trial court abused its discretion in allowing Officer Villarreal to testify over Alvarez's objection, we must evaluate whether the record supports a "showing of bad faith on the part of the prosecutor in the late designation and whether [Alvarez] could reasonably anticipate that the witness would testify although his name was not previously disclosed." *See Branum v. State*, 535 S.W.3d 217, 226 (Tex. App.—Fort Worth 2017, no pet.) (citing *Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992)).

Alvarez does not argue, and the record does not support, the State acted in bad faith. To the contrary, the record suggests the State freely provided the defense information and regularly updated witness lists. *See id.*; *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002) (stating that evidence should not be excluded absent evidence the State acted in bad faith in failing to disclose the evidence or willfully failed to respond to the trial court's order under art. 39.14(b)).

We must also consider whether Alvarez could reasonably anticipate Officer Villarreal's testimony. *See Branum*, 535 S.W.3d at 226. Alvarez does not contend he was not provided with a copy of the fingerprint report admitted as State's Exhibit #62, which was signed by both Officer San Miguel and Officer Villarreal. Based on the record, we conclude the evidence supports that

defense counsel could have reasonably anticipated that Officer Villarreal would testify regarding the fingerprint results contained in State's Exhibit #62. *See id.*; *Lemasuier v. State*, 91 S.W.3d 897, 900–01 (Tex. App.—Fort Worth 2002, pet. ref'd) (noting prosecutor's open file and witness's name in report in the State's file). We therefore cannot conclude the trial court abused its discretion in allowing Officer Villarreal to testify regarding the fingerprint analysis and we overrule Alvarez's issue regarding the exclusion of the officer's testimony.

2. *Trial Court's Denial of Alvarez's Motion for Continuance*

Alvarez also contends the trial court erred in denying his motion for continuance to allow him to prepare for Officer Villarreal's testimony.

"We review a trial court's ruling on a motion for continuance for abuse of discretion." *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (citing *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)). "To find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that the defendant was prejudiced by his counsel's inadequate preparation time." *Cates v. State*, 72 S.W.3d 681, 692 (Tex. App.—Tyler 2001, no pet.) (quoting *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995)).

We note defense counsel was very familiar with the evidence and the witnesses throughout the trial. Although defense counsel requested a continuance, the trial court noted the court provided the defense with the opportunity to hire a defense expert, but the defense did not do so, and defense counsel did not explain how any continuance would allow him to more adequately prepare for Officer Villarreal's testimony. There is no question that Officer Villarreal's testimony was cumulative of Officer San Miguel's testimony. Both officers testified regarding State's Exhibit #62—that the fingerprint on the chest of drawers was a match to Alvarez's left-middle finger. Both officers signed the same report. Both officers conducted the same type of analysis, with the same technique. While defense counsel argued Officer Villarreal came as a complete

surprise, the officer was noticed on the witness lists filed with the court eleven days before trial and was a signatory on the fingerprint report provided during the original discovery. Because we conclude Alvarez failed to show actual prejudice, we cannot conclude the trial court abused its discretion in denying the motion for continuance. *See Gallo*, 239 S.W.3d at 764; *Cates*, 72 S.W.3d at 692. We overrule Alvarez's appellate issue regarding the trial court's denial of his motion for continuance.

### CONCLUSION

Having overruled each of Alvarez's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH